MICHAEL A. SLAWEK AND BARBARA A. SLAWEK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Slawek v. Commissioner
Docket No. 21891-87
United States Tax Court
T.C. Memo 1991-338; 1991 Tax Ct. Memo LEXIS 379; 62 T.C.M. (CCH) 215; T.C.M. (RIA) 91338; July 24, 1991, Filed *379 Decision will be entered under Rule 155. Michael A. Slawek and Barbara A. Slawek, pro se, and David J. Picker, for the petitioners. Russell K. Stewart, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM FINDINGS OF FACTS AND OPINION The parties stipulated to deficiencies in income tax of $ 20,065 for 1982 and $ 45,272 for 1983. Petitioners seek to be relieved from their stipulation. They also argue reliance on accountants as a defense to respondent's determination of negligence, and contest the addition to tax for substantial understatement of income tax. Respondent determined deficiencies and additions to tax as follows: Additions To Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1982
$ 80,459
$ 4,023
50 percent of the
$ 20,115
interest due on
$ 80,459
1983
75,669
3,783
50 percent of the
18,917
interest due on
$ 75,669
After concessions, the issues to be decided are: 1. Whether petitioners are bound by the stipulated deficiencies. We hold that they are. 2. Whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2). We hold that they are. 3. Whether petitioners *380 are liable for additions to tax for substantial understatement of income tax under section 6661. We hold that they are. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All references to petitioner in the singular are to Michael A. Slawek. Petitioner Barbara A. Slawek will be referred to as Mrs. Slawek. FINDINGS OF FACT 1. Petitioners
Petitioners are husband and wife who resided in Pennsylvania when they filed their petition in this case. Petitioner is a dentist. Petitioner also was a dental consultant for the Fraternal Order of Police and Firefighters of Philadelphia where he generally spent half a day on Fridays. During 1982 and 1983 petitioner became involved in building a Montgomery Ward dental center in Catonsville, Maryland, about 150 miles from his home. Mrs. Slawek is a housewife. She was not involved in the dental practice or in maintaining any records of the dental practice or petitioner's investments. She was not trained in accounting or taxes. Petitioners own real estate which produced rental income in 1982 and 1983. Petitioners were *381 very busy with management of their real estate. Petitioners, their 6 children ages 10 to 20, and a friend of one of the children resided at petitioners' home during 1982 and 1983. 2. The Dental Practice Finances
Petitioner had a vigorous dental practice as a sole practitioner. He worked 12 hours a day, 4 days a week, and a half day on Fridays. He was not involved in the daily bookkeeping operations of his dental practice but he had input regarding recording and payment of expenses. Susan Mako, the office bookkeeper, made deposits and disbursements. During 1982 through 1984, petitioner's father sometimes helped in an unpaid capacity with office bookkeeping, including paying bills by check. Ms. Mako balanced the dental account bank statements. Petitioner's employees used his signature stamp to execute his checks. Petitioner's employees gave him cash receipts from his dental practice which he rarely deposited. Both petitioners withdrew funds from the dental account for personal use through checks to cash. Petitioner never received a payroll check. Petitioners commingled business and personal financial matters. Petitioner or his employees generally deposited receipts *382 from his other business activities, such as rents and income from the Montgomery Ward dental practice, into his dental practice bank account. Petitioner or his employees paid expenses for maintenance, utilities, and similar items for his rental properties from his dental bank account. Petitioner occasionally deposited dental practice or other investment receipts into other accounts. 3. Petitioners' Income Tax Returns and Accountants
Petitioners filed joint income tax returns for 1982 and 1983. They reported gross receipts of $ 488,742 for 1982 and $ 411,498 for 1983, and taxable income of $ 3,430 for 1982 and $ 5,541 for 1983. Petitioners claimed only one child as a dependent on each return. Petitioner met Thomas Schneider, a certified public accountant, at the local Lions Club. Mr. Schneider and his partner, James Monahan, prepared petitioners' returns for 1982 and 1983. They subsequently pleaded guilty to conspiring to prepare false income tax returns for taxpayers other than petitioners. Petitioners' returns did not list rental expenses and income separately, only one dependent was claimed, and expenses were not itemized. Nearly all of the items on petitioners' *383 1982 and 1983 returns were changed in the calculation of the agreed deficiencies. As directed by petitioner and his accountants, Ms. Mako and petitioner's staff gathered bank statements and other records to submit to the accountants for tax return preparation. She did not tell Messrs. Monahan and Schneider that the cash receipts from petitioner's dental practice were not deposited. Neither petitioner reviewed the returns before signing them. In April 1984, petitioner showed his 1983 return to John Kowalski, a certified public accountant, and asked him if it was satisfactory. This occurred in a parking lot before petitioner retained Mr. Kowalski. Mr. Kowalski told petitioner that the return appeared to be fraudulent and that he should not file it. Despite Mr. Kowalski's advice, petitioner filed the return. Petitioner later hired Mr. Kowalski to represent him at the audit. Mr. Kowalski did not know what instructions petitioner's office staff received from Messrs. Schneider and Monahan. As of April 1984, petitioner began relying on Mr. Kowalski to get his books, records, and financial matters in order. Sometime in September 1989, petitioner discharged Mr. Kowalski and hired *384 Saul Bernstein, a certified public accountant. Mr. Bernstein had no knowledge of the information that Messrs. Monahan and Schneider used to prepare the returns at issue. He believed that petitioners' books and records for 1982 and 1983 were so incomplete and unorganized that an accountant could not prepare a return based on them. Mrs. Slawek was not involved in the preparation of petitioners' tax return for 1982 and 1983. 4. Stipulation of Facts and Petitioner's Posttrial Motions
Before and during trial, petitioners were represented by David Picker, their attorney, and also assisted by Saul Bernstein, their accountant. On May 23, 1988, at a previous trial session before another Division of this Court, the parties reported a basis for settlement and lodged an unsigned decision document for 1982 and 1983 with a deficiency that is considerably higher than those in the stipulation of facts now filed in this case. At that prior trial session Mr. Picker stated that it represented the agreement, but he was granted 30 days to have petitioner's accountants review the numbers. The decision document was not filed. On September 12, 1988, respondent filed a motion for entry of *385 decision. Petitioners objected, alleging that the calculations were inaccurate. Respondent's motion was denied and the case was continued. The case was later assigned to this Division of the Court. Petitioner, Mr. Picker, and respondent's counsel drafted the stipulation of facts. Following extensive negotiations and consultations with attorneys and accountants, the parties agreed, as stated at paragraph four of the stipulation, to corrected taxable income and deficiencies for each of the years at issue. The agreed deficiencies were lump sum. Any assumptions upon which the agreement was based were not made a part of the record. The stipulation was agreed to and signed by petitioners and their attorney, Mr. Picker, and by attorneys for respondent. The stipulation was submitted to the Court. At trial Mr. Picker pointed out that petitioners' accountants arrived at slightly lower numbers for taxable income for both years at issue. Ultimately, the parties agreed to slightly lower numbers for taxable income and deficiency in income tax for 1983. The changes were handwritten and initialled. The stipulation of facts and accompanying exhibits were made a part of the record. After *386 trial, petitioners notified the Court that they had discharged Mr. Picker as their attorney and would proceed pro se. The Court ordered Mr. Picker withdrawn from further proceedings in this case. Petitioners filed several motions after trial challenging the trial stipulation. The motions were: a. A Motion to Vacate Stipulation of Facts. It alleged that the stipulation was signed under protest and severe duress. The motion sought to relieve petitioners from the stipulation. b. A Motion for Reconsideration to Withdraw and Reform Stipulation of Fact and for Further Hearing and Reconsideration. In this motion petitioners alleged confusion due to lack of continuity of their accountants, mutual mistake in the stipulation of facts, and medical incompetency of petitioner due to medication for his chronic ulcer. c. A supplement to their motion for reconsideration. The supplement primarily addressed petitioners' version of their proper tax liability. d. A Motion to Open the Record and Submit New Evidence. It alleged that the 1982 return to which they stipulated and which was admitted into evidence was not the return they signed and filed in 1983. e. A Motion to Dismiss Trial *387 Due to Respondents [sic] Willful Suppression of Evidence and Willful Submission of Fraudulent Evidence Which Caused Undue and Severe Prejudice At All Levels of Negotiations and During the Trial and Furthermore Not the Least Precluded Petitioners From Obtaining Justice. Petitioners alleged that this motion was based on new documentation and arguments, that the Form 1040 for 1982 was incorrect, and they sought to be relieved from their stipulated deficiencies. In support of their motion, petitioners pointed to a copy of their 1982 Mercantile Tax Return filed with the City of Philadelphia that included parts of their Federal income tax return. All of these motions were opposed by respondent and denied by the Court. OPINION 1. Relief From Stipulation of Facts and Posttrial Motions
At trial the parties filed a stipulation in which they agreed to deficiencies for the years at issue. After trial petitioners filed several motions primarily seeking relief from their stipulation. The motions were denied. We have again reviewed petitioners' motions and the entire record, and conclude that the stipulation should be enforced. Generally, a stipulation of fact is controlling on *388 the parties, and the Court is bound to enforce it. ; Rule 91. Rule 91 provides in part: (e) Binding Effect: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. * * *
Petitioners seek relief from the stipulation on grounds of mutual mistake. They assert that an incorrect return for 1982 as well as incorrect calculations were the basis for the stipulated deficiencies. Petitioners argue that they are seeking to establish the correct tax liability for both years. The portion of the stipulation that petitioners seek to rescind contains a settlement of the deficiencies. Compromise and settlement of tax cases is governed by general principles of contract law. , affd. ; ; *389 . The considerations for the Court to take into account are akin to those for vacating a consent judgment, and the parties are held to their agreements without regard to whether the judgment is correct on the merits. ; Recision of consent decrees and settlements must be made carefully. As stated by the Supreme Court, Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies *390 as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. * * * [Fn. ref. omitted.]
. Petitioners also claim that the 1982 income tax return, which is part of the record, is not the return that they filed. They claim that this return resulted in an erroneous agreement from which they are entitled to relief. We disagree. ; Petitioners also allege duress and coercion. The parties have been through extensive negotiations prior to arriving at the stipulated deficiencies. They even reported settling this case at a trial session the year before this trial was held where the deficiencies were higher and the settlement included additions to tax. Both sides consulted accountants and attorneys before agreeing to the deficiencies. We believe *391 petitioners knew what was being settled and agreed with the settlement at the time. They were well represented, advised, and involved in the process. We do not believe their claim that they did not understand the agreement. We are also not convinced that there was duress or coercion. If any mistake was made, it was not a mutual mistake. Even if there was, it was a unilateral mistake by petitioners for which they are not entitled to relief. See . Finally, petitioners argue that justice requires relief from their agreement. We find nothing unconscionable or oppressive about enforcing the agreement. See In light of the foregoing, we hold that petitioners are not relieved from the deficiencies to which they agreed in the stipulation filed at trial. 2. Negligence
Respondent determined negligence additions to tax under section 6653(a)(1) and (2). Section 6653(a)(1) imposes an addition to tax of five percent of an underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules and regulations. *392 In addition, section 6653(a)(2) imposes a further addition to tax of 50 percent of the interest payable on the portion of the underpayment attributable to negligence. Under section 6653(a), negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. ; . Petitioners bear the burden of proving that their underpayment of tax was not due to negligence. ; ; ; Rule 142(a). As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. ; . Petitioners contend they are an exception to the general rule because they relied in good faith upon Monahan and Schneider, their *393 certified public accountants. Good faith reliance on the advice of counsel or a qualified accountant can, under certain circumstances, be a defense to the addition to tax for negligence. ; . However, we do not think this defense applies here for several reasons. Petitioners did not check their returns. Taxpayers may be negligent where they signed their returns without checking them, even where the returns were prepared by an employee and checked by an accountant. ; ; . Petitioners blame their employees and accountants for their erroneous returns. It has long been held that taxpayers cannot escape their responsibility for a correct return by committing its preparation entirely to an employee or agent. ; ; *394 , affd. per curiam ; ; , affd. sub nom. ; . The fact that the taxpayer was busy and delegated recordkeeping duties to others did not excuse omission of income. ; , remanded on other issues . Petitioners did not show what information they gave to their accountants and lawyers. See . All we know is that Ms. Mako provided the specific information requested. She did not provide information regarding cash receipts from the dental practice, which were given to petitioner. We do not know what information petitioners' accountants had to *395 prepare the returns. Mr. Bernstein testified that he did not believe it was possible for any accountant to prepare returns based on petitioners' 1982 and 1983 books and records. We have held taxpayers liable for additions to tax for negligence when they argued reliance on an attorney, accountant, tax adviser, or tax return preparer who prepared a return where we did not know what information the taxpayer gave to the adviser. ; . Failure to ensure that the person preparing the return has all of the necessary information justifies imposition of the addition to tax for negligence. ; . Thus, notwithstanding the fact that petitioners' tax preparers pleaded guilty to preparing false returns for taxpayers other than petitioners, we find ample grounds to support our finding. Petitioners have failed to carry their burden of convincing us otherwise. 3. Substantial Understatement of Income Tax
Respondent *396 determined additions to tax for substantial understatement of income tax under section 6661. Section 6661 imposes an addition to tax when there is a substantial understatement of income tax for a taxable year. Sec. 6661(a). A substantial understatement exists if the amount of the understatement exceeds the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); ; . Petitioners appear to argue that the tax rate under this section is 10 percent. We disagree. The appropriate percentage rate is 25 percent. . Petitioners do not claim they are eligible for the exceptions of substantial authority under section 6661(b)(2)(B)(i), or adequate disclosure under section 6661(b)(2)(B)(ii). Accordingly, we sustain respondent's determination as to this issue using the *397 25-percent rate. In light of the foregoing, Decision will be entered under Rule 155.